We'll hear counsel in our final case, Muriithi v. Shuttle Express, Inc. Good morning, members of the panel. Good morning, Mr. Singleton. May it please the court, my name is Christopher Porlow and I'm counsel for the defendant appellant. Respectfully, we believe the district court's decision was an error in failing to compel the claims of the plaintiff to arbitration and we believe that the decision should be reversed. I wish to continue to reserve a few moments for rebuttal and I'll try to be brief in my opening comments. Simply and respectfully, we believe that the decision of the United States Supreme Court in Concepcion, which was issued a month after the district court's decision, requires that the decision of the district court cannot stand. Although the district court's decision was framed in terms of a problem with a class action waiver and with a fee splitting provision, the gist of the decision really was that the plaintiff could not proceed in arbitration because the allegedly small nature of the claim would not justify that the costs here stated $5,600 to proceed with the arbitration. The Supreme Court, however, has explicitly rejected that as a grounds for refusing to enforce an arbitration agreement. The dissent in Concepcion raised the question of whether small claims could fall through the cracks if you are not permitted to go forward with a class action in order to spread costs. But even if that was the case and a desirable reason for having class actions, the Supreme Court was clear that that issue could not overcome the strong public policy that exists to enforce the arbitration agreements between parties. Well, doesn't the Green Tree case say that you can look at the cost splitting as it relates to the enforceability of arbitration clauses? I'm not sure that it goes that far, Your Honor. Oh, it does. It says you can, yeah. What I think that the Green Tree decision did in dicta was talk about the hypothetical question of whether the costs of proceeding an arbitration, what would happen if a plaintiff could not pay those? And would that preclude enforcement of an arbitration agreement? The Green Tree assigns the burden to the party who seeks to invalidate the arbitration agreement on the grounds that arbitration would be prohibitively expensive. It says when the party is seeking to raise that as a defense, that party bears the burden of showing the likelihood of incurring such costs. And in this case, the party did not meet the burden. That is in Green Tree. And that's quoting from page 522. So the Supreme Court did definitely. I mean, what you say isn't correct. If you don't know what the case says, you know, you should tell us that. But it said something exactly opposite of what you're maintaining. Your Honor, the difficulty I have with the Green Tree decision is that the court did not need to answer the question of what would happen if the plaintiff, in fact, could not pay for the arbitration. Because in that case, the court found that there was insufficient evidence of that. Well, but the court recognized that it was a defense, did it not? Because if the plaintiff was assigned the burden of proof and failed to meet the burden, the court wouldn't have even gone there if that didn't exist as a defense. Isn't that correct? Absolutely, Your Honor. And this court in Adkins and Bradford have followed on that theory of vindication of rights. But it's interesting in the Concepcion decision, there's no mention of Green Tree or this vindication of rights theory. Right. Well, Concepcion was really directed toward the fact that the state had a law that was undermining the federal arbitration. And it wasn't talking about unconscionability of any particular costs of arbitration. But it said that the state cannot adopt a rule, in that case the Discover Bank rule, that precludes the federal arbitration from taking effect. Isn't that correct? Absolutely, Your Honor. Right. So why can't those two cases coexist together? The Concepcion was, in fact, I think primarily about class action waivers, the class action waiver that was brought about by the Discover Bank rule. But what many district courts and courts of appeal have latched on to following Concepcion was the language in Concepcion that said that the fact that small claims may fall through the cracks is not a justification for avoiding arbitrability. Right. But that doesn't take back the Green Tree recognition that prohibitive arbitration costs can be a defense to the duty to arbitrate under a contract. It does not, Your Honor. But I did find interesting that the Concepcion case neither mentions Green Tree nor the vindication of rights theory. And, of course, the Supreme Court has taken up for review for the third time the American Express merchants litigation, which will directly address the parameters of the vindication of rights theory. So since Green Tree still exists, I mean, Concepcion didn't do anything to Green Tree, and you seem to be agreeing to that. Your Honor, I'm not sure because I'm not the Supreme Court. I believe— Okay, but, you know, under Agostini, didn't the Supreme Court say, you know, we shouldn't figure out whether they were sub silentio trying to reverse another case? We should just apply the cases that they've written. I agree with that, Your Honor. Your Honor, I think the first reason is that a vindication of rights theory based on costs, which was different than the vindication of rights concept in the Mitsubishi decision, is not necessary under the FLSA. The way the FLSA was structured by Congress is that an individual could go to the Department of Labor to prosecute a claim. The Department of Labor could take that claim on individually or decide to bring it on behalf of a group. In addition to going to the Federal Department of Labor, an individual, Mr. Murthy, could have gone to a state agency, which often has parallel rights with respect to wage and hour claims. In addition, built into the text of the statute itself is the ability for an individual to negotiate his or her own claims, which permits an individual like Mr. Murthy to go to an employer. And there are protections built into the statute that say that the claims of that individual are not waived unless, in fact, the claims are paid off in their entirety. So based upon the structure of the statute and the creation of an agency empowered to carry out the goals of that statute, neither arbitration… Is there any statutory right that doesn't have an agency behind it that could represent the plaintiff? I mean, you'd be repealing an awful lot of federal law. No, I think… That creates private causes of action, if we follow your reasoning. I mean, the Department of Labor, the Department of Justice, the EEOC, my goodness. Your Honor, I think it's an issue, but built into the FLSA was the idea that small claims could exist. Is your client prepared this morning right here in open court to agree to cover all the costs? Yes. Why didn't you say that in the district court? The costs… Well, maybe you did. We didn't have an argument in the district court. You didn't have an argument, and you didn't do it in your memorandum. No, we did not. But you're saying this morning that you agree, your client agrees this morning, to waive the provision regarding splitting of arbitration costs for purposes of this proceeding. Yes, Your Honor, but I believe that the proper course that should have occurred here and which gives weight to the law of arbitrability should have been for Mr. Murithy, when any individual files for arbitration… To ask you to do that? Well, to first ask the panel if that fee can be waived. But wait a minute. Procedurally here, he filed it in court, and then you brought the motion to compel arbitration. And so I suspect Mr. Singleton's response is going to be, well, why didn't they just say that when they filed a motion for arbitration, to compel arbitration? By the way, we waived the splitting of cost provision in the franchise agreement. Your Honor, that could have occurred. And there are multiple decisions now that say, even if it's when I raise it with you today, that would cure an issue on that point with respect to an inability to proceed. But what really should happen is an approach to the arbitration panel that could waive the fee if that doesn't occur. Then he comes back to court? No, he could come to us and ask him to waive the fee. And in either of those circumstances, the issue of the cost is removed, Your Honor. That would be legal malpractice, don't you think? On whose part, Your Honor? Obviously, on the plaintiff's part. If a lawyer were to agree in federal district court, Judge, you can dismiss this because we're going to go to arbitration and then ask the respondent or the franchisor to waive the spleefitting provision. I can't imagine a lawyer ever doing that while conscious. I think there are myriad problems with the way this would play out if this decision is not reversed. We have a problem as defense counsel or any counsel who's seeking to enforce arbitrability. The first thing we've learned in Lawyer 101 is you must instantly move to compel arbitration for fear that you waive it by using the judicial forum. Although we have a recent case that sort of mitigated that. Yes, Your Honor. But in the absence of clear rules regarding this subject of vindication of rights based upon cost, I need to move to compel arbitration or have some arrangement with a district court judge that me doing so, me asking for discovery, me asking for the ability to depose the plaintiff about a tax return that we see for the first time in response to a motion to compel to test that. There are no rules that protect us in that circumstance. There are no rules where if discovery proceeds in court, where it probably is not supposed to proceed on the question of cost of arbitration. There's strong argument that that's something the arbitrator should look at. But what if that discovery then shows that the plaintiff could, in fact, pay for arbitration? What happens if there's an argument that the reason the plaintiff had to proceed in court was because of a group action and the court says there's no group action? What happens if I ask for financial disclosure and the district court judge, for very good reasons of privacy, says you can't have that? What happens to my client's substantive right to proceed in arbitration? I believe problems exist under the Rules Enabling Act and other provisions that take away that right to compel arbitration without any of the due process protections to ensure that there really was a factual basis for the plaintiff saying that it couldn't proceed in arbitration. And this case is a perfect example of that. When you look at what was stated here, the cost of this will be $5,600. There's no explanation or detail regarding that. There's no explanation of why a waiver couldn't be obtained. Well, what will the cost be? If somebody has to pay it, what would it be? Less, according to a number of courts, less than would likely be the cost for someone proceeding in litigation, Your Honor. No, no, no. Well, the $5,600 is sort of filing and administrative costs. Isn't that right? I didn't think so. I thought that was framed in terms of eight days of arbitrators at, seven days of arbitrators at $800 a day. But there is a filing fee that's involved. And there's an arbitrator's fee. There is. Up to $2,000, probably $3,000 today, right? Per day? Yeah. Some of these retired judges make a good bit of money. And they should, Your Honor. And they should. So should the sitting ones. So should the sitting ones. I'm not disputing that. And I'm almost out of time, Your Honor. The showing that was made here to justify not proceeding to arbitration when the parties had a clear, expressed intent to proceed to arbitration. Of course, your client will know exactly how much it costs. Presumably, because presumably you have gone through some of these arbitrations. Well, in all candor, Your Honor, once we've had an opportunity to discuss with the plaintiffs what they would need to show and disclose. Remember, these are not employees. These are independent contractors. Well, that's the question. Well, it is. But the issue of using a Schedule C to negate hundreds of thousands of dollars of income to end up with a result of a tax return that shows no income. My point was simply that, presumably, unless you're batting a thousand and defeating these claims on behalf of your client, eventually somebody is going to take one of these to arbitration, right? Yes. And that's probably already happened. Maybe not. You're not aware. In my time of representing the client, I've not been involved. Fair enough. You've reserved some time. Thank you. Plaintiff's Court. John Singleton for Mr. Morisi. And just to avoid confusion, all these people dressed in blue are not actors in some off-Broadway production of the blue people, but are the drivers. These drivers, and a central issue in this case, frankly, from my perspective, is when these drivers first are asked to sign a franchise agreement that includes this clause that says you will arbitrate any dispute. It's based upon a belief that there's a franchise agreement. Now, one of the counts of this is, and the central part of this is, no, that was fraud. This isn't a franchise agreement. In fact, you were all employees. And if one could avoid starting with what Congress started in 1947 with Taft-Hartley and 1964 with the Title VII Civil Rights Act, Americans with Disabilities Act, Fair Labor Standards Act, all these acts that are created and passed by Congress to protect employees would be absolutely wiped out. Just because someone can wipe... Let me ask you this. How do you get to $5,600 in this case? How do you get to what? How do you get the... What evidence is there in the record that this arbitration would cost $5,600? I can tell you I do a lot of... So, in the record, right? I don't know, Your Honor. I don't know what... Well, don't you have a proof failure then under Greentree? Because Greentree clearly says that the party... I was not the counsel at that time. Right. I understand that. But what I'm saying is you've got a problem under Greentree because it says here, a party who seeks to invalidate an arbitration agreement on the grounds of prohibitively expensive costs bears the burden of showing the likelihood of incurring such costs. And that's 522. You have to meet that burden in order to prevail, don't you? I believe that the court found the arbitrator, along with various other fees, could potentially add up to $5,600. Right, but what in the record... Is there a basis for finding that? It can't just be a conclusion without a factual basis. All I can do as representative of the court is I do a ton of arbitrations for unions, and I believe, as Davis is correct, that the average arbitral fee is about $2,000 to $3,000 a day, plus a day of reading, plus a day of writing, plus a day of this or that. And so most arbitrations cost around that amount. So you're saying that's meeting a burden of proof, having the judge say $5,600? Your Honor, I'm not going to dispute that with you, because I know one of the many factors is the fee-splitting provision of whether or not something is unconscionable. The court looked to prohibition of class actions and the truncating of statute of limitations. Under each of these laws, had these people believed they were employees and they were now waiving their rights to jury trials, they were waiving their rights to statutes of limitations, they were waiving their Section 7 rights under the National Labor Relations Act to join together for their mutual aid and protection, they were waiving a plethora of rights. Well, Maritha, you would still have had the ability, though, to prove that the costs of individual arbitration would be prohibitive, irrespective of any other waivers, would he not have? I will tell you this, Your Honor, that one of the arguments in making these people employees and why there was an FLSA case was because they were alleging that they were working 24 hours a day to make... You're not answering my question. To make not even minimum wage, to simply pay off those fees that they owed to Super Shuttle. And that was... So people who can't afford simply that, I don't care what... If you said the cost of arbitration was $300, I would tell you that these people can't pay it, because they don't make enough money. And simply... The record does need to show that, doesn't it? And I agree with you, Your Honor. I'm not sure whether they did it by affidavit or whether... But somehow this court believed and found that the cost of an arbitration was approximately $5,600. I will tell you, from my experience, that's rather low. But why not? Um... You know, the essence... And that's one of the things. I mean, one of the things is the class action. Can these people go forward? Can these people bring something as a class? Can... Or the truncating of statute of limitations. Each one of these are factors, Your Honor. I will tell you this, that the state of Maryland has found these people to be employees. And so... Can the arbitrator award attorney's fees at the end of the arbitration? Unless it's in the agreement, no. Well, I think they're entitled to it under the FLSA, aren't they? Under the FLSA. Now, at any point in this, as they continue to churn out franchise agreements, they've never made an attempt to change the wording in this. They have not, in the unemployment cases, as these people file unemployment, challenged the state of Maryland, said, oh, the state of Maryland, you know what? You've got to arbitrate each one of these unemployment cases. Okay, you can't make a state arbitrate. I'll agree with that. But... Well, isn't that the essence of this? They're saying a dispute that arises out of a franchise must be arbitrated, and they're saying, and we're saying, well, this doesn't arise out of the franchise. They're employees, and they're entitled to their rights under the Fair Labor Standards Act. There are all kinds of cases where the litigants can't afford to cost. Like, if you bring a medical malpractice case in Virginia, you're required to have an expert before you file a suit, and I promise you that medical malattorneys front the cost of that. Why wouldn't that happen here? Are they... If you prevail in the arbitration, are you entitled to all the relief you can get under the FLSA? That's up to the arbitrator, Your Honor. Well, okay, it's up to the... Okay, are you... And the arbitrator award attorney's fees. I guess the arbitrator, as in any such thing, such as Title VII or this, the prevailing party is entitled to reasonable attorney's fees as determined by that court. Now, I don't know that they use any matrix. I don't know... Where does it say that? Does it say that in the Federal Arbitration Act? No, it says that in... If one were saying... It says that in the FLSA. Yeah, if one were saying that I prevailed, I'm now actually bringing not a claim that's under the Franchise Agreement, I'm bringing a claim under the Fair Labor Standards Act, which, frankly, doesn't fall under the Franchise Agreement. But anyway, but if we're arbitrating that, you would think that the arbitrator should be able to have the same authority as any court or whatever to award a remedy. Now... But they're not getting a jury trial. They're not getting a statute of limitation that matches what that statute might be. That's part of the thing about arbitration. Pardon me? You have to pay jury costs at arbitration. That's an advantage for everybody. Some people... Under American Arbitration Association, you have to pay a fee up front. And then you get charged by the day. You get a list of arbitrators, and you pick. And some may vary from, you know, $3,000 a day, $4,000 a day, to $1,200 a day. It just depends. And how long each case might take. So... How long would these cases take to try? I could tell... I mean, your proof in this case would be that Mr. Murithy went to work, and here's how they sent him out to do shuttle runs. Okay. And the first problem would... And here's how often he did it, and how frequently he did it, and they treated him just like an employee. Isn't that right? That's pretty much what the evidence is in this case. The evidence is that every aspect of their employment was absolutely controlled by this employer. And so, ergo, they're employees. Right. And that's what the court found. The court found in each and every one of these that these people were employees. What court found that? I believe that everything I read in this decision is that according to... they have treated them as employees, and... Nobody's rewarded them any relief yet, have they? No. I believe the issue of whether or not they're employees is not before this court. Well, it's not. No, they are employees. I think for the purposes of this appeal, they have to be considered employees. Why is that? Yeah. All that's happened below is the district court denied the motion to dismiss and the motion to compel arbitration. District court hasn't made any findings. I won't spend my time. It was my impression, Your Honor, that the court had found that these people, or at least based upon, in the light most favorable to them, that they were employees. I can tell you that numerous bodies have found them to be employees, but if that's the issue, if the issue is are they vindicating or are they arbitrating a dispute that arises out of the franchise agreement, or are they arbitrating a dispute that arises out of a federal act, the Fair Labor Standards Act, might be Title VII, might be ADA, might be any number. In January of last year, NLRB rules that if these people were employees, that any agreement that they could not have a class action was a violation of their Section VII rights under the National Labor Relations Act to join together for their mutual aid and protection. That's the essence of the Taft-Hartley Act. And so here were people joining together for their mutual aid and protection, and the only way they could go to any one of these things, whether utilize arbitration, whether whatever their right may be that Congress felt was important to give them, could not actually be vindicated through arbitration. Tell me what's at stake in each of these cases. If these people are classified as employees, they can go back two or three years under the FLSA, right? They can go back two years for an unintentional violation, three years for an intentional violation. And how much more would they get in this case if they were to prevail? Just on average, if you know. Don't know, just say I don't know. I don't know. It would be literally, they're saying, I worked 24 hours a day. I did not even make minimum wage. Well, okay. So they worked overtime. So now you multiply minimum wage times overtime for the other 18 hours of the day. And you do that for two years or three years and you get that person. That's not how you compute overtime. Overtime is computed on a weekly basis. Over 40 hours per week. Over 40 hours, yeah. And I'm saying if I'm working 24 hours a day, seven days a week, they're not working 24 hours, seven days a week. Or else they'd be dead. I will tell you, Your Honor, that they have slept in their vehicles. They have done whatever they have had to do to survive and be able to pay what they had to pay in fees each week. Well, I will agree they've been treated badly. That's apparently, if what's in the complaint is true, they've been badly mistreated. Yes. Especially under the FLSA. But the problem that I have with the whole situation is I don't know, without knowing how much money is at stake, and without knowing with some certainty what the arbitration cost is, I don't think, maybe my colleagues are different, but I don't think I can make an analysis under the Green Tree decision of whether this is prohibitive. I mean, I will confess that the average FLSA case has low dollars in it. It is my understanding that the district court found that it was based upon the fee-splitting provisions, the prohibition against class-action claims, the truncating of statute of limitations. Mr. Singleton, I'm sorry, and I don't mean to interrupt your answer to Judge Gibney, but is the appellant's undertaking here today on the record to relieve your client of arbitration costs take that issue entirely out of the case now? I would say to you this, is that there are a plethora of rights that they would have had. They would have had a right to. Could you just answer my question first and then go on? That was not ever offered. I understand, but it's now offered here on the record in open court, and my question is, does that take that issue out of this case? I don't... I could go through and ask each one of them. Well, no, you only have one client here on appeal. I appreciate the presence of these gentlemen. But part of this whole thing was whether or not they could file a class action, and that's why all of them are here. I'm not sure they were going to get an answer to that question, no matter what the outcome of this case is. But my point simply is that with respect to the undertaking, that issue is no longer in this case. I think because it is now... there's some representation made at this late stage that, gee, we'll pay the cost of arbitration after many years later, when we may or may not be able to prove or find the records or do whatever we have to do, whether we would have the right... So you want to hedge? Okay, I understand that. There's a lot of rights, and there's a lot of time that has passed that has made it... Well, I don't think he's asking whether you would accept the offer. The question is whether the cost... If they say, we'll pay the cost, does the cost issue go out of the case? The answer to that has got to be yes, doesn't it? I could say to you this, is I think that would make... Certainly it would have made a difference had it been said at that time. I don't know that answers all the questions, because I think the question here is whether or not the federal arbitration requirement must apply in situations where it's in a contract that says, anything in this contract, any dispute in this contract, has to be arbitrated. I'm saying, even if that's true, we weren't talking about something in this contract. We were talking about other rights that emanate out of federal statutes. And it doesn't say that anything, any dispute between the parties, regardless of what it might be, must be arbitrated. It limits those disputes to those things that arise out of an interpretation or some section of this agreement, and that is not one of the sections of this agreement. If the court has nothing else, I will... Thank you, Mr. Singleton. Mr. Parlow, you have some time remaining. Before you do your rebuttal, could I just ask you, I couldn't find it, is there anywhere in the franchise agreement notice to the prospective franchisee that he or she should retain counsel or has the right to counsel or anything? Normally, not normally, but often we see that kind of language in a disparate bargaining power kind of situation. Your Honor, I don't recall if there is in the franchise agreement, but there is also a 50-page franchise disclosure document. So it may be in there. Yes, which everyone must get a certain number of days... And that's not in the record book. ...before signing. I don't think it is, Your Honor. Okay, thank you. Well, can an arbitrator declare the contract unconscionable? There are many grounds for unconscionability, Your Honor. No, can an arbitrator make that decision? I don't know where the state of the law is on that. I would hope that that, in the first instance, is a judicial decision because... Well, but you're saying that they don't get a judicial decision. So my question is, can they go to an arbitrator and get everything they would get in court except a jury trial? Different question. Yes, and to the question that one of you raised about whether attorney's fees can be awarded, I see nothing in this arbitration agreement or in the rules of the AAA that would preclude that. And I don't see anything in here, and parties are able to, in arbitration clauses, limit the ability to get certain forms of relief. And there are certain limits here, but not as to attorney's fees, not as to the damages available under the FLSA. You asked a question about whether this was an average FLSA case. It's not close to an average FLSA case. Just on the issue of the overtime that Mr. Singleton indicated would be due, that's tens of thousands, if not $100,000, with double damages over a three-year period. In addition, in this case, because these are independent contractors, unlike employees, there's a $35,000 franchise fee, a $25,000 fee approximately for a van, costs of mileage, tolls, and everything else, which the plaintiffs in these cases seek recovery of because that would be illegally passing on the costs of doing business to an employee. So under a mandatory reimbursement statute or an anti-deduction statute, we're already talking without overtime, well over $70,000, close to $100,000 without the overtime component. So this is not an average FLSA case, but you wouldn't know that because there's nothing in the record contrary to the decisions, prior decisions of this court.  Very briefly, there's not a decision in here that these individuals are employees. The only thing that happened in this case, because we're petrified about not moving to compel arbitration immediately, is we moved to compel arbitration. There's been no decision on the merits about whether these are employees or not. It's not in the record, but the NLRB, including in Region 29, has found that these individuals were not covered by the NLRA because they were, in fact, supervisors, because they can have, and many of them do have, people driving for them. But there's been no decision that these individuals are employees. Judge Keenan, I didn't mean to mislead in any way with respect to Green Creek. That's okay. No, I understand. You gave me what you thought was your best answer. I know the Supreme Court is not supposed to overrule things. Don't worry about it. I've been an advocate. I understand. What I'd like, though, because I think it's a little muddled now, and that's why we're here before you, is some guidance. If a decision like the district judge's decision is upheld, what are we to do? When do we have to do it by? What discovery can we get? Can we get financial disclosure? What happens if we're proceeding down multiple steps in front of a court when it turns out that there can't be a payment? And I don't know the answer to any of that. Are there any cases arising under this particular franchise agreement in any courts of appeal around the country? Yes, the 8th Circuit Court of Appeal. Pending or...? Decided in the Green case, which is in the materials, and the court upheld the arbitration agreement. Any others? Yes, Your Honor, the Reed case in the Southern District of New York upheld... Court of Appeals. I'm sorry, Your Honor, District Court. The only court of appeals is the 8th Circuit Court of Appeals. The 8th Circuit. Yes, sir. And you're not aware of any more recent, since you filed the brief, I mean... No, not for Super Shuttle. Not for Super Shuttle. I provided to Your Honor in a letter the Owen decision, and we're aware of the 9th Circuit's decision in CONF, which we think supports our view and perhaps how the Supreme Court may go on this issue when it takes up the Amex case again soon. What is the impact of the Maryland Department of Labor's investigation of this? There's no impact. A, it's on appeal. B, it's under a completely different statute. The unemployment insurance statute is virtually impossible to overcome as an entity to show that someone is not an employee. It's a completely different test than under the FLSA. It's a completely different test than under the tax laws. Because this is an independent contractor case, we've got, you know, an interplay of different sets of rules, but there's no impact of the Maryland decision. You sure about that? Yes. No collateral estoppel, claim preclusion, issue preclusion? No, sir, and some... Will that be true after the Maryland Court of Appeals or the Maryland Court of Special Appeals rules? That I don't know. At the tribunal stage, some states even have rules that it can't be admitted under any circumstances because it would mess up the ability of parties to do whatever they needed to do in that forum. I don't know the answer if... So if we end up with a decision of the Maryland Court of Appeals or the highest Maryland court, then it could be an issue. Okay. Thank you, Your Honor. Thank you very much, Mr. Carlo. We'll ask the clerk to adjourn court and we'll come down to Greek Council. This honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court. Thank you.
judges: Andre M. Davis, Barbara Milano Keenan, John A. Gibney Jr.